UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANKUR RAKSHIT,<br><br>   Plaintiff<br><br>v.<br><br>LAYERX TECHNOLOGIES INC., et al.,<br><br>   Defendants | Case No.: 2:25-cv-00911-APG-NJK<br><br>**Order Granting in Part Defendants' Motion to Dismiss**<br><br>[ECF No. 6] |

This dispute arises from Ankur Rakshit's termination as chief financial officer from Matter Labs and its subsidiary, LayerX Technologies Inc. (LayerX). Matter Labs is the sole shareholder of LayerX, which acts as the "employing entity" for Matter Labs.[1] ECF No. 1-4 at 4. Rakshit left his previous job, accepting a written employment offer from Matter Labs. *Id.* at 4-5. Rakshit's compensation, outlined in the offer letter, included a signing bonus, a salary, potential cryptocurrency tokens, and stock options that would begin vesting after Rakshit worked at Matter Labs for one year. *Id.* Rakshit did not receive any equity because he was terminated approximately eight months into the job over Zoom by the CEO and COO. *Id.* at 4-5, 7.

Rakshit filed this lawsuit contesting his termination, based on a clause in LayerX's bylaws. The bylaws state that

> any officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board of Directors at any regular or special meeting of the board or, except in the case of an officer chosen by the Board of Directors, by any officer upon whom the power of removal is conferred by the Board of Directors.

---

[1] As this is a motion to dismiss, the facts presented here are based on the allegations in Rakshit's complaint.

*Id.* at 8.  Rakshit asserts that the Board did not vote for his removal and had not conferred removal power on any officer. *Id.* at 8-9.  He sues LayerX for breach of contract (the bylaws) and breach of the implied covenant of good faith and fair dealing.  He also brings a claim against LayerX and Matter Labs under Nevada Revised Statutes (NRS) § 613.010 for influencing or persuading him to change his place of employment under false pretenses.  LayerX and Matter Labs move to dismiss all his claims.  I grant the motion to dismiss Rakshit's claim for breach of the implied covenant of good faith and fair dealing but deny the motion to dismiss the remaining claims.

**I. ANALYSIS**

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  As the moving party, the defendants have the burden to show that the plaintiff has not plausibly alleged a claim upon which relief can be granted. *Sintigo v. Pompeo*, No. 2:19-CV-00465-APG-VCF, 2020 WL 14053449, at *3 (D. Nev. July 20, 2020); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (holding that on a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented"); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (holding that "the district court erroneously placed

the burden on Plaintiffs to demonstrate that they stated a claim for relief" and, because "Defendants failed to meet their burden of proof, . . . the district court should have dismissed Defendants' motion").

If dismissal is granted, Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires. Leave to amend should be granted unless there is a reason not to, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Generally, "dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) (quotation omitted).

**A. I deny the motion to dismiss Rakshit's breach of contract claim.**

LayerX and Matter Labs argue Rakshit does not allege the existence of a valid contract because the bylaws were not incorporated into an employment contract. And even if there was a contract, they claim there was no breach because the bylaws' language is permissive, so a board vote was not required to terminate Rakshit. In short, the defendants contend Rakshit was an at-will employee and therefore cannot bring a breach of contract claim based on his termination. Rakshit responds that (1) the defendants' argument fails to address whether corporate bylaws create a contract between the company and its officers, and (2) their permissive reading of the bylaws would render them meaningless. He contends the bylaws created a valid contract that was breached when he was terminated without a board vote.

Under Nevada law, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the

plaintiff; (3) material breach by the defendant; and (4) damages." *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1145 (D. Nev. 2017) (quotation omitted).[2]

### 1. Rakshit sufficiently alleges that LayerX's bylaws created an enforceable contract with him.

Rakshit alleges that LayerX's bylaws "constitute a valid and enforceable contract between [himself] and Defendant LayerX." ECF No. 1-4 at 12. The defendants do not meet their burden to show why the bylaws did not create an enforceable contract with Rakshit. Rakshit does not allege he had an employment agreement or that the bylaws were incorporated into an employment agreement, so the defendants' arguments are largely directed at a theory Rakshit does not assert. The defendants do not address whether a corporate officer is a party to the bylaws such that the officer has standing to bring a claim for breach of contract under the bylaws independent of any employment agreement.

The defendants first argue that Rakshit was an at-will employee, so he cannot sue for breach of contract. But the law they cite only prevents bringing claims for breach of an employment contract by an at-will employee. *See Norton v. PHC-Elko, Inc.*, 46 F. Supp. 3d 1079, 1086, 1093 (D. Nev. 2014) ("Plaintiff also alleges that Defendant and Plaintiff had an

---

[2] The parties appear to disagree over the applicable law without adequately arguing whether Nevada or Delaware law applies here. Rakshit contends Delaware law applies because LayerX is a Delaware corporation. ECF No. 10 at 8-9. The defendants do not dispute this, arguing only that "whether the Court applies Delaware or Nevada law, the result is the same." ECF No. 13 at 4. I apply the law of the state where the contract was executed. *See Davis v. Jouganatos*, 402 P.2d 985, 988 (Nev. 1965). I also recognize the internal affairs doctrine, which subjects internal corporate affairs to the laws of the state of incorporation. *Gaynor v. Buckley*, 318 F.2d 432, 434 (9th Cir. 1963); *see CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 78 (1987); *Brunk v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 449 P.3d 1270, 2019 WL 5110141, at *2 (Nev. 2019). As neither party argues this case involves affairs internal to LayerX, I apply Nevada law for purposes of this motion because that is where the contract (the bylaws) appears to have been executed with regards to Rakshit. Regardless, neither party identifies how the outcome of this motion would be different under Delaware law.

employment contract that Defendant breached when it terminated him without cause. . . ."). This argument does not address whether Rakshit can sue for breach of a contract separate from an employment agreement, here the bylaws.

Next, the defendants contend that "[i]n order for the Company's Bylaws to be an enforceable contract with Plaintiff, the Bylaws must be incorporated and made a part of a valid and enforceable employment contract between LayerX and Plaintiff." ECF No. 6 at 6. The defendants provide no case law to support this proposition. The precedent they provide analyzes when an external document, such as bylaws or an employee handbook, are incorporated into an employment contract. *Id.* But Rakshit does not allege that the bylaws were incorporated into an employment contract. Rather, he alleges the bylaws are the relevant contract. ECF No. 1-4 at 12; *see also* ECF No. 10 at 8 (arguing the bylaws "form part of the binding contract between the company and its officers").

Granted, there may be problems with Rakshit's theory. Bylaws might not form a contract with the company's officers and might only impose duties on them. *See Matter of Baldwin-United Corp.*, 43 B.R. 443, 459 (S.D. Ohio 1984) (finding that bylaws create a contract between the corporation and its shareholders, not the corporation and its officers and directors, so they were only non-party beneficiaries under the bylaws). And even if an officer is a party to corporate bylaws, it is not certain he or she can bring a claim to recover personal damages for a breach of those bylaws. *Cf. Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, No. 08-CV-376-BR, 2009 WL 4826474, at *6 (D. Or. Dec. 8, 2009), *aff'd*, 436 F. App'x 792 (9th Cir. 2011) (finding no "cause of action for damages for breach of contract between shareholders for violations of a corporation's bylaws" under Delaware law). But the defendants do not sufficiently address these issues, so they have not met their burden on their motion to dismiss.

Lastly, the defendants argue that Rakshit does not allege that his employment was for a definite term. ECF No. 6 at 7. This issue is relevant to whether Rakshit was an at-will employee but, as explained above, whether he was an at-will employee does not address his breach of contract claim. In any event, the defendants misstate the applicable law. They contend Rakshit must plead both a definite employment term and no contractual or statutory termination restrictions to show his employment was not at will. *Id.* However, only one is required. Either a definite employment term or a restriction on termination will destroy an at-will employment agreement. *Yeager v. Harrah's Club, Inc.*, 897 P.2d 1093, 1095 (Nev. 1995) (explaining at-will employment requires that the "employment is not for a definite period" and that "there are no contractual or statutory restrictions on the right of discharge"). Rakshit has pleaded that the bylaws created a contractual restriction on the right of discharge.

### 2. Rakshit plausibly alleges a breach of LayerX's bylaws.

The defendants contend there was no breach of LayerX's bylaws because "any officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board of Directors." ECF No. 6 at 9-10 (quotation omitted). As their argument goes, because this provision uses "may," it is permissive and officers do not need to be terminated in this manner.

When construing a contract, I should consider the contract as a whole and "should not interpret a contract so as to make meaningless its provisions." *Phillips v. Mercer*, 579 P.2d 174, 176 (Nev. 1978). If the removal provision in LayerX's bylaws was permissive, the question arises why this provision was included at all. Certainly, the provision would be clearer if used "must" or "may only" instead of simply "may," but the current wording does not warrant dismissal of Rakshit's claim at this stage. It is at least plausible the provision of LayerX's

bylaws was meant to be mandatory, especially when reading the provision in its entirety. It includes an exception that an officer chosen by the board cannot be terminated by an officer "upon whom the power of removal is conferred by the Board of Directors." ECF No. 1-4 at 8. The defendants' reading would make this exception meaningless. A permissive interpretation would allow LayerX's officers, here the CEO and COO, to terminate other officers, even if those terminated officers were selected by the board. Additionally, the defendants' permissive reading means officers upon whom the power of removal was not conferred could also terminate other officers. Reading this provision as a whole, including the exception, indicates that LayerX's board of directors intended to retain some control over the termination of officers. It is at least plausible that the defendants breached LayerX's bylaws when they terminated Rakshit without a board vote, so I deny the motion to dismiss the breach of contract claim.

> **B. I dismiss the claim for breach of the implied covenant of good faith and fair dealing because Rakshit fails to allege how LayerX acted in a manner unfaithful to the purpose of its bylaws.**

The defendants contend that this claim must be dismissed because there was no contract and, even if there was, LayerX's conduct was not unfaithful to the bylaws' purpose. Rakshit argues that LayerX's performance under the bylaws was unfaithful to their purpose because he was terminated without a board vote.

Nevada law implies a covenant of good faith and fair dealing in every contract. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Id*. "To establish a claim for breach of the implied covenants of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties;

(2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016). Different from a breach of contract claim, breach of the implied covenant of good faith and fair dealing requires literal compliance with the contract's terms. *Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020) (quotation omitted); *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Jimenez*, 448 F. Supp. 3d at 1113 (quotation omitted).

Rakshit does not allege how LayerX acted in a manner unfaithful to the purpose of the bylaws. He states that "LayerX failed to act in good faith and to the best of its ability." ECF No. 1-4 at 13. This is merely a recitation of the second element and does not establish a plausible factual basis for his claim. *See Twombly*, 550 U.S. at 555-56. Rakshit argues that his complaint "describes how LayerX failed to abide by the Bylaws" by "terminating [him] without action from the Board of Directors." ECF No. 10 at 12. But this is the same conduct on which he bases his breach of contract claim and thus is insufficient to state a claim for breach of the implied covenant of good faith and fair dealing. *See Jimenez*, 448 F. Supp. 3d at 1113. Because amendment does not appear futile, I grant Rakshit leave to amend this claim. *See Sonoma Cnty.*, 708 F.3d at 1118.

/ / / /

/ / / /

/ / / /

### C. Rakshit sufficiently pleads a NRS § 613.010 claim based on recent Supreme Court of Nevada precedent.

NRS § 613.010(1) makes it

> unlawful for any person . . . doing business in this state . . . to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any of the departments of labor in this state, through means of false or deceptive representations, false advertising or false pretenses.

A plaintiff aggrieved by a violation

> shall have a cause of action for recovery and may recover at law for all damages that the worker shall have sustained in consequence of the false or deceptive representations, false advertising or false pretenses used to induce the worker to change his or her place of employment, or place of abode in case such worker shall not be then employed at the time of such inducement and hiring.

NRS § 613.010(3).

LayerX and Matter Labs move to dismiss Rakshit's NRS § 613.010 claim because he does not allege that he physically relocated when he switched jobs to begin working for the defendants. Rakshit responds that, under the statute, he does not need to plead physical relocation. Rakshit does not allege that he physically relocated his place of abode or employment when he switched employers. The only question raised by the defendants' motion is whether it is necessary to allege physical relocation under NRS § 613.010. The Supreme Court of Nevada recently ruled it is not.

The Supreme Court of Nevada "conclude[d] that changing a place of employment satisfies the requirements for a civil claim under NRS 613.010." *Field Effect Sec. Inc. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, --- P.3d ----, 141 Nev. Adv. Op. 63, 2025 WL 3491454, at *3 (Nev. 2025); *see also Field Effect Sec. Inc. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, S.

9

Ct. Nev. Case No. 89495, Doc. No. 26-0075 (denying petition for rehearing).[3] This ruling eliminates the necessity of changing one's "place of abode" to state a claim under NRS § 613.010. However, the opinion is ambiguous about whether changing one's "place of employment" requires a physical change in the plaintiff's workplace or whether changing employers is enough.[4] The opinion states only that the worker "switched places of employment to work for Field Effect," and that "he lived at the same address in Las Vegas before, during, and after his employment with Field Effect." *Id.* at *1. However, the parties' briefs reveal that the employee worked remotely from home for both his previous employer and after switching jobs to work for Field Effect.[5] The *Field Effect* ruling does not require any physical relocation, either of the place of abode or employment, and only a change in employer. Thus, Rakshit not alleging any physical relocation does not preclude his NRS § 613.010 claim. I therefore deny this portion of the defendants' motion to dismiss.

## II.  CONCLUSION

I THEREFORE ORDER that the defendants' motion to dismiss **(ECF No. 6) is GRANTED in part.** I dismiss Rakshit's claim for breach of the implied covenant of good faith and fair dealing with leave to amend. His remaining claims will proceed.

/ / / /

---

[3] The parties did not have the benefit of this ruling when they briefed the motion to dismiss.

[4] The Supreme Court of Nevada uses language that seemingly indicates "place of employment" means the physical workplace location, saying "the plain meaning of 'place' is a 'physical environment,' which encompasses both a place of abode *and* a place of employment." *Id.* (citing *Place, Merriam-Webster's Collegiate Dictionary* 887 (9th ed. 1983)).

[5] *Field Effect Sec. Inc. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, Nev. S. Ct. Case No. 89495, Pet. for Writ of Mandamus, Doc. No. 24-39551 at 13; Appx. to Pet. for Writ of Mandamus, Doc. No. 24-39553 at 22-24, 27; Reply in Support of Pet. for Writ of Mandamus, Doc. No. 25-11681 at 7-8.

I FURTHER ORDER that Rakshit may file an amended complaint by February 2, 2026. I grant Rakshit leave to amend solely to plead additional facts that may support his claim for breach of the implied covenant of good faith and fair dealing.

DATED this 12th day of January, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE